Petition for Writ of Mandamus Denied and Memorandum Opinion filed
December 11, 2008








 

Petition
for Writ of Mandamus Denied and Memorandum Opinion filed December 11, 2008.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-08-00673-CV

____________

 

IN RE HOUSEHOLD FINANCE CORPORATION III, Relator

 

 



 

ORIGINAL
PROCEEDING

WRIT OF MANDAMUS

 



 

M E M O R
A N D U M   O P I N I O N

On July
28, 2008, relator, Household Finance Corporation III (AHFC@), filed a petition for writ of
mandamus in this court.  See Tex. Gov=t Code Ann. ' 22.221 (Vernon 2004); see also Tex.
R. App. P. 52.  In the petition, HFC asks this court to compel the Honorable
Lamar McCorkle, presiding judge of the 133rd District Court of Harris County,
to enforce the February 15, 2005 rescission order.  We deny the petition.  

                                                               Background








On
February 24, 2003, real party in interest, Renee K. Penick, delivered to HFC a
promissory note in the amount of $88,000, which was secured by a deed of
trust.  On May 26, 2004, the trial court entered judgment against Penick and in
favor of Hunter=s Glen Municipal Utility District on its claim for delinquent
taxes.  On September 7, 2004, the property was sold at a tax sale for $57,000
to Sonal Bhagia.  Excess proceeds in the amount of $54,037.98 remained after
deducting costs and amounts owed to Hunter=s Glen.  The excess proceeds were
deposited into the registry of the court.  

On
September 20, 2004, Penick and NK Resources, Inc. entered into an agreement
granting NK Resources or its attorney the authority to act on Penick=s behalf in the tax delinquency
suit.  On October 14, 2004, Penick, via warranty deed, assigned to NK Resources
her interest in the property.  Nanick Bhagia is the president of NK Resources. 
Sonal Bhagia, the purchaser of the property, is Nanick Bhagia=s daughter. 

On
November 10, 2004, Penick filed a claim for excess proceeds of the tax sale in
the tax case in which HFC had been served but had not made an appearance.  That
same day, copies of Penick=s pleading, which was signed by her attorney, John
Knobelsdorf, and notice of hearing were served on HFC=s registered agent by certified mail,
return receipt requested.  A hearing on this claim was set for November 30,
2004.  The hearing was to be conducted before the tax master.  The tax master
instructed Penick to reset the hearing because notice had not been sent to
Foxwood Homeowners Association.  

The
rehearing was reset for December 21, 2004.  Notice of the new hearing date was
sent to HFC=s registered agent by certified mail, return receipt requested on
December 1, 2004.  At the reset hearing (on December 21, 2004) before the tax
master, Penick, Foxwood Homeowners Association, and various taxing authorities
appeared.  HFC did not appear at the hearing.  The tax master accepted the
proposed order, which, if entered, would compel the disbursement of the excess
proceeds.  The tax master recommended that the trial court sign the proposed
disbursement order.  A few weeks later, on January 3, 2005, the trial court
signed the order disbursing the excess proceeds.  Also, on January 3, 2005, HFC
filed a petition to claim excess proceeds.  








On
January 18, 2005, the tax master heard HFC=s petition to claim excess proceeds. 
HFC=s attorney called Penick=s attorney, John Knobelsdorf, from
the court to inform him that the hearing was taking place.[1] 
By the time HFC=s attorney returned to the courtroom, the tax master had
written a draft rescission order for the funds to be repaid into the registry
of the court.  The trial court, however, did not sign it that day.  

On
February 8, 2005, the proceeds were disbursed when the Harris County Treasurer=s Office issued a check in the amount
of $52,422.95 to MacNaughton Knobelsdorf & Co, and a check in the amount of
$1,615.03 to Foxwood Homeowners Association.  On February 9, 2005, John
Knobelsdorf, Penick=s attorney, deposited the $52,422.95 check into his firm=s IOLTA account.  Knobelsdorf then
paid the proceeds to NK Resources, less his attorney=s fees.  On February 15, 2005, the
trial court signed the tax master=s hand-written proposed rescission
order.  On April 29, 2005, Penick filed a voluntary bankruptcy, and several
month later received a bankruptcy discharge.  

On May
12, 2006, HFC filed a motion for contempt against John Knobelsdorf for
violating the February 15, 2005 rescission order by refusing to return the
money to the registry of the court.  On April 27, 2006, Penick filed a motion
requesting that the trial court set aside the rescission order as void on the
grounds that the trial court=s plenary power had expired when it signed the order.  On May
22, 2006, the trial court denied Penick=s motion to set aside the rescission
order as void.  After a hearing on July 10, 2006, the trial court denied HFC=s motion for contempt.  On December
12, 2006, after discovery to learn Penick=s whereabouts, HFC filed a second
motion for contempt against Knobelsdorf and now Penick.  On November 5, 2007,
the trial court denied HFC=s second motion for contempt.  








On
December 31, 2007, HFC filed a motion for leave to file a third party action
against NK Resources and Nanick Bhagia, president of NK Resources, because
Penick had signed a limited power of attorney granting NK Resources the
authority to make a claim for excess proceeds in Penick=s name, and John Knobelsdorf had
disbursed the excess proceeds to NK Resources.  On January 14, 2008, the trial
court denied HFC=s motion for leave to file a third party action against NK
Resources and Bhagia.  

On May
8, 2008, Penick, through her attorney, John Knobelsdorf, signed an agreed order
stating that HFC is entitled to the excess proceeds.  That same day, HFC filed
a motion to enforce the February 15, 2005 rescission order and the return of
excess proceeds to the registry of the court and a motion for sanctions.  The
following day, Penick withdrew her consent to the agreed order because there
was not a meeting of the minds.  

On June
2, 2008, the trial court held a hearing on HFC=s latest motion to enforce the
February 15, 2005 rescission order.  At the hearing, the parties presented
argument regarding whether the trial court had plenary power to enforce the rescission
order.  After Penick argued that HFC=s two prior motions had been denied,
the trial court asked AWell, why aren=t we on our way to the appellate
court?@  At the end of the hearing, the
trial court denied HFC=s motion to enforce the rescission order and stated, ALet=s get it to the appellate court.@  On July 28, 2008, HFC filed its
petition for writ of mandamus in this court, seeking to compel the trial court
to enforce the February 15, 2005 rescission order.  

                                                       Standard of Review

To be
entitled to the extraordinary relief of a writ of mandamus, the relator must
show that the trial court clearly abused its discretion.  In re Team Rocket,
L.P., 256 S.W.3d 257, 259 (Tex. 2008) (orig. proceeding).  A trial court
clearly abuses its discretion if it reaches a decision so arbitrary and
unreasonable as to amount to a clear and prejudicial error of law.  Walker
v. Packer, 827 S.W.2d 833, 839 (Tex. 1992) (orig. proceeding).








                                                                       Issues

In its
first issue, HFC asserts that the February 15, 2005 rescission order is not
void because it was signed more than thirty days after the January 3, 2005
order.  In its second issue, HFC then asserts that it is entitled to mandamus
relief to remedy the trial court=s clear abuse of discretion in
allegedly refusing to enforce the February 15, 2005 rescission order.  HFC asks
this court to issue a writ of mandamus compelling the trial judge to enforce
the February 15, 2005 rescission order and to force the parties, individuals,
and entities in question to return the proceeds to the registry of the court.  


                                                                    Analysis

                                              Section
34.04 of the Texas Tax Code

Section
34.04 sets forth the process for a party to claim the excess proceeds after a
tax sale.  Tex. Tax Code Ann. ' 34.04 (Vernon 2008).  The portions of section 34.04 relevant
to this proceeding state:

(a) A person, including a taxing unit, may file a petition in the court
that ordered the seizure or sale setting forth a claim to the excess proceeds. 
The petition must be filed before the second anniversary of the date of the
sale of the property.  The petition is not required to be filed as an original
suit separate from the underlying suit for seizure of the property or
foreclosure of a tax lien on the property but may be filed under the cause
number of the underlying suit.

(b) A copy of the petition shall be served, in the manner prescribed by
Rule 21a, Texas Rules of Civil Procedure, as amended, or that rule's successor,
on all parties to the underlying action not later than the 20th day before the
date set for a hearing on the petition.

                                                                   *       
*        *

(e) [A]n order under this section is
appealable.

Id. ' 34.04(a),(b), and (e).








             Trial
Court=s Plenary Power to Enter February 15,
2005 Rescission Order

Penick
argues that the February 15, 2005 rescission order is void because it was
signed more than thirty days after the January 3, 2005 order disbursing the
proceeds.  Penick contends that the January 3, 2005 order is a final order
because in it the trial court orders the disbursement of all of the excess
proceeds.  Although HFC=s counsel knew by January 18, 2005, of the January 3, 2005
order, no motion for new trial, or any other motion, was filed that would
extend the trial court=s plenary power.  

A trial
court has plenary power over its judgment until it becomes final.  Fruehauf
Corp. v. Carrillo, 848 S.W.2d 83, 84 (Tex. 1993) (per curiam).  Plenary
power refers to that period of time in which a trial court may vacate its
judgment by granting a new trial, or in which it may modify or correct its
judgment.  In re Gillespie, 124 S.W.3d 699, 702 (Tex. App.CHouston [14th Dist.] 2003, orig.
proceeding).  A trial court=s plenary power is extended only by the timely filing of (1)
a motion for new trial, (2) a motion to vacate, modify, or correct the
judgment, (3) or any motion seeking a substantive change in the court=s judgment.  Id. at 703.  Only
timely filed motions extend the trial court=s plenary jurisdiction.  L.M.
Healthcare, Inc. v. Childs, 929 S.W.2d 442, 444 (Tex. 1996) (per curiam). 
A party must file a motion to modify judgment and motion for new trial within
thirty days from the date the trial court signed the judgment.  Id.  








The
trial court signed the February 15, 2005 rescission order more than thirty days
after signing the January 3, 2005 disbursement order. To determine whether the
February 15, 2005 rescission order is void, we first must ascertain whether the
January 3, 2005 disbursement order is final for purposes of appeal.  Penick
maintains that, because HFC did not file a timely motion for new trial or other
motion that would extend the trial court=s plenary power, the trial court had
no jurisdiction to render the February 15 rescission order.  Penick also
contends that the January 3, 2005 order was appealable because section 34.04
treats disbursements orders as final.  See Tex. Tax Code Ann. ' 34.04(e) (stating that Aan order under this section is
appealable@).  Finally, Penick asserts that the disbursement order is final because
it disposed of the entire amount of excess proceeds.  








HFC
argues that the February 15, 2005 rescission order is not void because the
January 3, 2005 disbursement order does not dispose of all claims and parties
because its own claim to the excess proceeds was pending in the trial court
when the trial court signed the disbursement order.[2] 
HFC relies on this court=s opinion in Johnson v. Ameriquest Mortgage Co., No.
14-04-00121-CV, 2004 WL 1066750 (Tex. App.CHouston [14th Dist.] May 13, 2004, no
pet.) (per curiam) (mem. op.).  In that case, Johnson filed a claim for excess
proceeds under section 34.04 of the Texas Tax Code.[3] 
Id. at *1.  Ameriquest, a former lienholder against the foreclosed
property, intervened to claim excess proceeds.  Id.  Johnson, claiming
she had not received notice of the intervention until after the hearing before
the tax master, did not give notice of the hearing to Ameriquest.  Id. 
On the recommendation of the tax master, the trial court signed an order to
disburse the excess proceeds to Johnson and to certain taxing authorities.  Id. 
Ameriquest filed a motion to set aside the order to disburse excess proceeds,
asserting that the order was interlocutory because Ameriquest had intervened to
claim excess proceeds and its claim had not been disposed of in the order.  Id. 
The tax master recommended that Ameriquest=s motion be denied, and Ameriquest
appealed to the district court.  Id.  After a hearing, the trial court
signed an order setting aside its disbursement order, and ordered Johnson to
return the funds to the registry of the court.  Id.  

This
court observed that, to be final, a judgment must dispose of all claims.  Id.
(citing Lehmann v. Har-Con Corp., 39 S.W.3d 191, 200 (Tex. 2001)). 
Because the disbursement order failed to dispose of Ameriquest=s claim, it was not final, and the
trial court retained plenary jurisdiction to later set aside the order.  Id.
(citing Nelson v. Lubbock Cent. Appraisal Dist., No. 07-02-0349-CV, 2003
WL 1987959 (Tex. App.CAmarillo April 30, 2003, no pet.) (mem. op.).  Johnson=s appeal was dismissed because the
order setting aside the disbursement order was interlocutory and not subject to
appeal.  Id.  

This
court relied on Nelson v. Lubbock Central Appraisal District in
determining that the trial court had retained plenary power to set aside the
disbursement order because it failed to dispose of Ameriquest=s claim.  In Nelson, following
a sheriff=s sale, excess proceeds of $33,566.36 were deposited with the clerk of
the court.  2003 WL 1987959, at *1.  Silverman filed a petition to claim excess
proceeds.  Id.  Subsequently, the Secretary of Veterans Affairs filed a
motion to claim excess proceeds.  Id.  The trial court heard Silverman=s claim for the full amount of the
excess proceeds, and the Secretary=s claim for $24,980.88.  Id.
at *2.  The trial court granted the Secretary=s claim and ordered that the clerk of
the court issue payment for $24,980.88.  Id.  The order did not address
the distribution of the remaining balance of $8,585.48 in excess proceeds.  Id. 
The Nelson court held that the order was interlocutory because it did
not dispose of Silverman=s claim or direct the distribution of the balance of the
excess funds; therefore, the appeal was dismissed for want of jurisdiction.  Id. 









Penick
asserts that HFC=s reliance on Johnson is misplaced because HFC, unlike
Ameriquest, received two notices regarding the hearings on Penick=s claim for excess proceeds.  Penick
further points out that, in the January 3, 2005 disbursement order, unlike the
disbursement order in Nelson, the trial court disbursed all of the
excess proceeds.  We reject Penick=s distinctions.  First, the fact that
HFC received notice of both the original and reset hearing dates is not
material to this issue.  Instead, HFC=s claim for excess proceeds was
pending when the trial court signed the January 3, 2005 disbursement order.  We
conclude that the January 3, 2005 disbursement order did not dispose of HFC=s pending claim.  We are bound by
this court=s prior opinion in Johnson.  Accordingly, we conclude that the
January 3, 2005 disbursement order did not dispose of all pending claims to the
excess proceeds and is not a final, appealable order.  

                              Service
of HFC=s Petition Pursuant to Rules 8 and
21a

In its
second issue, HFC then asserts that it is entitled to mandamus relief to remedy
the trial court=s clear abuse of discretion in allegedly refusing to enforce
the February 15, 2005 rescission order.  Penick contends that the February 15,
2005 rescission order was obtained by defective service, i.e., without notice
to Penick=s attorney, even though Penick=s petition, which was signed by her
attorney, had been filed in the trial court.  Under section 34.04(b), A[a] copy of the petition shall be
served, in the manner prescribed by Rule 21a, Texas Rules of Civil Procedure,
as amended, or that rule=s successor, on all parties to the underlying action not
later than the 20th day before the date set for a hearing on the petition.@  Tex. Tax Code Ann. ' 34.04(b).

Rule 21a
of the Texas Rules of Civil Procedure, which is referenced in section 34.04(b),
provides for service on a party=s attorney of record as an acceptable method of service:

Every notice required by these rules, and every
pleading, plea, motion, or other form of request required to be served under
Rule 21, other than the citation to be served upon the filing of a cause of
action and except as otherwise expressly provided in these rules, may be served
by delivering a copy to the party to be served, or the party=s duly authorized agent or attorney
of record, . . . 








Tex. R. Civ. P. 21a. 
Moreover, pursuant to Rule 8 of the Texas Rules of Civil Procedure, A[a]ll communications from the court
or other counsel with respect to a suit shall be sent to the attorney in
charge.@  Loffland Bros. Co. v. Downey,
822 S.W.2d 249, 251 (Tex. App.CHouston [1st Dist.] 1991, orig. proceeding) (citing Tex. R.
Civ. P. 8) (emphasis added).[4]  Therefore,
when a party is represented by counsel who has made an appearance, rules 8 and
21a, when applied together, require that all communications be sent to the
party=s attorney.  Morin v. Boeker,
122 S.W.3d 911, 914 (Tex. App.CCorpus Christi 2003, no pet.). 

The
certificate of service on HFC=s petition states that it was served on Penick as Apro se defendant@ via certified mail, return receipt
requested at two addresses in Aurora, Colorado.  Foxwood Homeowners= Association and the various taxing
authorities were served through their respective attorneys of record.  

On
January 18, 2005, the tax master heard HFC=s petition to claim excess proceeds. 
It was at this hearing that HFC=s counsel learned, from another attorney, of Penick=s claim to the excess proceeds, the
December 21, 2004 hearing, and the prior January 3, 2005 order.  HFC=s attorney then called Penick=s attorney, John Knobelsdorf, from
the hallway outside the courtroom, informing him that a hearing was taking
place before the tax master on HFC=s claim to the excess proceeds.  When
HFC=s attorney returned to the courtroom,
the tax master already had prepared the handwritten proposed order rescinding
the January 3, 2005 disbursement order for the trial court=s signature.  After the hearing, HFC=s counsel faxed a copy of the
handwritten order to Knobelsdorf.  








When
Penick asserted her claim, HFC had not yet appeared through counsel, and so she
served her pleading  on HFC=s registered agent.  The pleading, in which Penick claimed
the excess proceeds, was signed by Penick=s attorney.  On the other hand, even
though Penick already had appeared through counsel, HFC did not serve its
petition on Penick=s attorney.  The record of the July 10, 2006 hearing before
the trial court reflects the following:

MR. BEERS [Counsel for Penick=s
attorney]: What happened after January 3rd is that [HFC] appeared in the tax
court in January 18th but did not get notice to all of the parties. . . .

                                                                   *       
*        *

MR. CURRAN [Counsel for HFC]: . . . At the time I reviewed the court=s docket electronically, I reviewed everything B I ordered a copy of everything that had been imaged
on the assumption that that was everything that was there.

. . . [T]he Petition to Claim Excess Proceeds had not been imaged.  It
wasn=t on the court=s B so at that time I filed my petition B [HFC=s] Petition to
Claim Excess Proceeds, completely unaware that the homeowner had filed an
appearance much less a Petition to Claim the Excess Proceeds, much less that
there had been a hearing conducted. . . . 

                                                                   *       
*        *

MR. CURRAN: . . . So I filed the Petition to Claim Excess Proceeds on
December 29th in complete ignorance of the fact that they had already appeared
in the case, filed the petition to the claim, and actually had a hearing on it
on December 24th [sic]. 

                                                                   *
       *        *

I appear[ed] at the January 18th setting on [HFC=s] Petition to Claim the Proceeds.  At that time Ms.
Johnston was actually present at the motion B
because she had appeared at the judgment.  I had noticed her, you know, that
they were in the case.  That=s when she
enlightened me as to all the other proceedings I had missed.

I promptly went out in the hall, and called Mr. Knobelsdorf, explained
what happened, what was going on, came into the court, apprised [the tax
master] of all the facts.  Mr. Knobelsdorf was available by telephone. . . .








                                                                   *       
*        *

MR. CURRAN: And if I might add, Your Honor, at the conclusion of that
hearing, I faxed a copy of the proposed order that had been drafted by [the tax
master] . . .

HFC sent
a copy of its petition to Penick at two addresses in Aurora, Colorado, but did
not serve her counsel of record.  There is nothing in the record reflecting any
claim by Penick that she did not receive HFC=s petition at either of the two
addresses to which the petition was mailed.  However, even if Penick actually
received HFC=s petition, such service is not effective because HFC=s petition was not served on her
attorney of record.  Cf. McGahey v. Daughters of Charity Health Servs. of
Waco, No. 10-02-00288-CV, 2008 WL 1903300, at *1 (Tex. App.CWaco Aug. 25, 2004, no pet.)
(rejecting defendant=s argument that party had received notice of reinstatement of
case because, when a party is represented by counsel, notice is not effective
unless served on counsel).  

Moreover,
the fact that a copy of the handwritten order prepared by the tax master was
faxed to Knobelsdorf after the January 18, 2005 hearing is not sufficient to
remedy the  defective service.  In Trevino v. Hidalgo Publishing Company,
the Corpus Christi Court of Appeals rejected the appellant=s argument that notice of a summary
judgment hearing was defective because it was not served on attorney of
record.  805 S.W.2d 862, 863 (Tex. App.CCorpus Christi 1991, no writ).  In
that case, however, the appellant=s attorney informed the court
coordinator on the morning of the hearing that he was ready and would be at the
hearing, but later did not appear at the hearing or request a continuance.  Id. 
In the subsequent opinion of Morin v. Boeker, the Corpus Christi Court
of Appeals stated that it would not extend the holding in Trevino beyond
the particular facts of that case and explained that ATrevino holds no more than that when an
attorney has actual knowledge of a hearing and declares to the court that he is
ready to proceed, any allegations of improper notice are precluded.  The
remainder of the opinion=s language was unnecessary for the case=s disposition and thus constitutes
dicta.@  122 S.W.3d at 915B16 (citations omitted).  








We
conclude that, because HFC did not serve a copy of its petition to claim excess
proceeds or a notice of the January 18, 2005 hearing on Penick=s attorney of record, proper service
was not accomplished in accordance with rules 8 and 21a.  See Lester v.
Capital Indus., Inc., 153 S.W.3d 93, 96B97 (Tex. App.CSan Antonio 2004, no pet.) (holding
service of motion for summary judgment and notice of hearing on party, rather
than party=s attorney of record, violated rules 8 and 21a, and lack of notice was
injurious and prejudicial because nonmovant=s attorney could not file response to
motion for summary judgment); Morin, 122 S.W.3d at 916 (holding, because
clerk of county court mailed notice of cost to perfect appeal from justice of
the peace court to parties rather than their attorney of record, rule 143a=s twenty-day period to pay costs
never commenced to run, and county court erroneously dismissed appeal for
failure to pay costs); Rolon v. Rolon, 907 S.W.2d 670, 671 (Tex. App.CBeaumont 1995, no pet.) (holding
that, where notice of trial setting was sent to party, but not party=s attorney of record, and attorney
did not received notice of setting until one or two days prior to trial date,
trial court committed reversible error by trying case when appellant had to
appear pro se after court insisted that attorney withdraw or go forward to
trial).  Because of this lack of proper service, the trial court did not abuse
its discretion by declining to enforce the February 15, 2005 rescission order.[5]
See Mocega v. Bradford Urquhart M.D., 79 S.W.3d 61, 64B65 (Tex. App.CHouston [14th Dist.] 2002, pet.
denied) (reversing dismissal of medical malpractice action because of improper
notice of dismissal hearing).  

 

                                                                              

 








Conclusion

Because
the January 3, 2005 disbursement order did not dispose of HFC=s claim to the excess proceeds, the
trial court had plenary power to enter the February 15, 2005 order.  However,
because Penick=s attorney of record was not served with HFC=s petition to claim excess proceeds
or the notice of the January 18, 2005 hearing pursuant to rules 8 and 21a,
service was defective.  Therefore, the trial court acted within its discretion
by declining to enforce the February 15, 2005 order. We conclude that HFC has
not established its entitlement to the extraordinary relief of a writ of
mandamus.[6]  Accordingly,
we deny relator=s petition for writ of mandamus.[7]

 

 

 

/s/        Kem Thompson Frost

Justice

 

 

Petition Denied and Memorandum
Opinion filed December 11, 2008.

Panel consists of Justices Frost,
Seymore, and Guzman.









[1]  As addressed elsewhere in this opinion, Penick
argues that she received no notice of HFC=s
petition or the January 18, 2005 hearing,





[2]  HFC filed its petition on the same day the trial
court signed the disbursement order.  It is not known whether the trial court
had signed the disbursement order before HFC filed its petition to claim excess
proceeds.  Penick apparently accepts HFC=s
position that its petition was filed in the trial court before the trial court
signed the disbursement order.





[3]  Section 34.04 of the Texas Tax Code provides for
claims to excess proceeds:

 

(a)  A person, including a taxing unit, may file a
petition in the court that ordered the seizure or sale setting forth a claim to
the excess proceeds.  

 

Tex. Tax Code Ann. '
34.04(a).





[4]  Rule 8 of the Texas Rules of Civil Procedure states:

 

On the occasion of a party=s first appearance through counsel, the attorney whose
signature first appears on the initial pleadings for any party shall be the
attorney in charge, unless another attorney is specifically designated
therein.  Thereafter, until such designation is change by written notice to the
court and all other parties in accordance with Rule 21a, said attorney in charge
shall be responsible for the suit as to such party.

 

Tex. R. Civ. P. 8.  





[5]  HFC did not address this argument in its reply to
Penick=s response, nor has HFC asserted that service was
effected by other means or proffered any argument or record citations that
would indicate proper service on Penick was accomplished.  





[6]  Because of this disposition, it is not necessary to
address Penick=s other arguments.





[7]  Nothing in this opinion precludes HFC from seeking
another hearing on its claim after giving proper notice.